UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| **JIMMY L. GOODMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 3:16-cv-00097 |
| ) | REEVES/SHIRLEY |
| **CITY OF KINGSTON, TENNESSEE,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

Jimmy Goodman filed this action against his former employer, the City of Kingston, alleging he was not afforded his rights and protections under the Family Medical Leave Act (FMLA), and was unlawfully terminated in violation of the FMLA.

This matter is before the court on the City's motion for summary judgment [R. 22]. The City submits that Goodman cannot establish that he was discharged, interfered, or retaliated against because of his use of FMLA leave. The City submits Goodman never put it on notice that he suffered from a serious health condition or requested FMLA leave; and Goodman was terminated from his employment for a legitimate, nondiscriminatory reason, that he failed to return from leave and abandoned his job.

Goodman responds that the notices given to his employer on multiple occasions were sufficient to put the City of notice of a serious back condition and the City failed to

inform him of his rights to take unpaid leave under the FMLA after he had exhausted his paid sick leave.

## I. Background

Goodman worked for the City for fifteen years prior to his termination on February 27, 2014. Goodman was a supervisor in the Public Works Department, a position he held for approximately ten years. Goodman's duties included supervising the men on his crew and performing general Public Works Department tasks.

The City's Personnel Policies and Procedures manual deals with benefits including vacation leave, sick leave, and FMLA. Goodman signed that he had received a copy of the personnel policies when he was first employed with the City. The City also posted notices throughout the workplace to provide employees with notice of their rights under multiple laws and regulations including the FMLA. The policy manual specifically provided that vacation time had to be scheduled in advance so proper adjustments could be made in work schedules.

The record shows that between December 19, 2013 and February 27, 2014, Goodman worked only one day. During his 39-day absence, Goodman saw various physicians for earaches, dizziness, stomachaches, headaches, anxiety, and other ailments for which he sought medical care and treatment. The City does not dispute Goodman had earned sick leave to take time off for these ailments.

Goodman's medical records show that he saw Dr. Willett for sinus symptoms, tightness of skin, and fatigue on December 26, 2013. There is no reference to back or neck problems. On physical exam, examination of Goodman's neck was normal. On January

2

3, 2014, Goodman again saw Dr. Willett, complaining of abdominal pain, sinus symptoms, and vertigo. There is no reference to neck or back pain.

On January 13, 2014, Goodman returned to Dr. Willett with complaints of dizziness. There is no mention of neck or back pain; instead, examination of Goodman's neck was normal. Dr. Willett gave Goodman a return to work form stating Goodman could return to work on January 22 with "no restrictions." The next day, Goodman saw Dr. Willett complaining of dizziness with references to pain and headache. Again, examination of Goodman's neck was normal. Goodman received a work excuse from Dr. Willett stating Goodman is excused from work 1/22/14 – 1/30/14 for "medical reasons."

Goodman missed several weeks of work in January 2007, due to issues with his spine. In November 2013, he began experiencing pain in his spine. When he continued to have problems with his spine, he saw neurologist Dr. Lynch on January 10, 2014. Dr. Lynch, noted that in years past, Goodman had suffered from neck and back pain, but "most of those symptoms have actually resolved." Dr. Lynch further noted Goodman had a complaint of abdominal pain with poor appetite.

On January 30, 2014, Goodman returned to Dr. Lynch and had discussions about neck and back pain. Dr. Lynch gave Goodman a note indicating he could return to work "when testing is concluded" and noted "cervical/lumbar radiculopathy." Dr. Lynch referred Goodman to Oak Ridge Neurosurgery.

On February 14, 2014, the testing ordered by Dr. Lynch was completed. On February 18, 2014, Dr. Lynch noted that the MRI revealed that Goodman had arthritis in

3

his neck and his back "looked ok." Dr. Lynch referred Goodman to Dr. Maccree at Oak Ridge Neurosurgery.

On February 19, 2014, Goodman saw Dr. Willett complaining of dizziness and hearing problems. Goodman made no complaints of neck or back pain, and received no treatment for neck or back pain on that occasion.

Goodman's sick leave exhausted on February 19, 2014. Goodman did not return to work, nor did he request any vacation time after his sick leave expired. The City avers that Goodman was required to ask for vacation time in advance, failed to do so, and the City considered him to have abandoned his job. On February 27, 2014, the City sent a letter to Goodman advising that his employment was terminated due to violations of City policy, exhaustion of sick leave, and his failure to comply with the policy related to vacation leave.

Two weeks after his termination, Goodman saw Dr. Maccree, a neurosurgeon, on March 6, 2014. Dr. Maccree noted Goodman had "very mild stenosis" in the cervical spine; but noted he could not find a medical reason to explain Goodman's symptoms. On March 27, 2014, Dr. Maccree noted Goodman "has a fairly unremarkable history other than a sense of generalized numbness including the top of his head to the bottom of his feet." He further noted, the MRI "does not show any significant neural impingement at any level, that in his cervical spine, the patient only has minimal findings that would affect specifically a C5 nerve root distribution, not generalized symptoms as he has. Therefore, I do not feel that finding has anything to do with his overall symptoms as it does not compromise the cord in any way." Dr. Maccree further opined, "I do not think

4

physiologically or radiologically there is evidence to suggest an underlying central nervous system or radicular reason for his symptoms."

Dr. Maccree's notes show that on May 19, 2014, Goodman called Dr. Maccree and asked him to change his notes to facilitate a worker's compensation claim for Goodman. Specifically, Goodman asked Dr. Maccree to change his notes to reflect that Goodman's symptoms came on as a result of jackhammering. Dr. Maccree declined to do so based on his notes reflecting Goodman had told him his pain "had come on over a ten year period of time."

## II.  Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

5

The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

On May 5, 2016, an agreed order was entered dismissing all state claims [R. 13]. That order also dismissed any claims Goodman had for violations of his FMLA rights accruing prior to February 5, 2014. The remaining issue before the court is whether the City violated Goodman's rights under the FMLA after Feburary 5, 2014, and when it terminated him.

### III. Analysis

**A. FMLA Interference**

Goodman alleges he was not afforded his rights and protections under the FMLA and was unlawfully terminated by the City in violation of the FMLA. The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave each year if, among other things, an employee has a "serious health condition that makes the employee unable to

6

perform the functions of the position of such employee." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506 (6th Cir. 2006).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any FMLA provision." *Donald v. Sybra, Inc.,* 667 F.3d 757, 761 (6th Cir. 2012). The Sixth Circuit recognizes two distinct theories for recovery under the FMLA: (1) the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). *Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004). Goodman has asserted claims for both interference and retaliation.

The "interference" or "entitlement" provision of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in [the FMLA]." 29 U.S.C. § 2615(a)(1). A violation of the Act exists if an employer interferes with the FMLA-created right to medical leave or to reinstatement after qualified leave. *Arban v. West Pub. Corp.,* 345 F.3d 390, 401 (6th Cir. 2003). To establish a *prima facie* claim of interference under the FMLA, Goodman must show that: (1) he is an eligible employee, (2) the City is an employer covered by the FMLA, (3) he was entitled to FMLA leave, (4) he gave the City notice of his intention to take leave, and (5) the City denied him FMLA benefits to which he was entitled. *See Hoge*, 384 F.3d at 244.

In FMLA interference claims, the issue is "whether the employer provided the employee with the entitlements provided by the FMLA." *Young v. United Parcel Service, Inc.*, 992 F.Supp.2d 817, 827 (M.D.Tenn. 2014). The termination of one's employment

7

constitutes FMLA interference when the termination is to prevent the employee from exercising the right to FMLA leave. *See, e.g., Arban,* 345 F.3d at 401 ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.").

The City argues Goodman never put it on notice that he suffered from a "serious health condition" or requested FMLA leave. The term "serious health condition" signifies an illness, injury, impairment, physical, or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a healthcare provider. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 420 (6th Cir. 2004). Goodman claims that he suffered from a serious medical issue in the form of spinal stenosis and lower back disk problems starting in November, 2013.

The medical record shows that although Goodman saw various doctors during December, he made no complaints of neck or back pain. It was not until January 10, 2014, that Goodman saw his neurologist Dr. Lynch complaining of pain in his spine. Goodman returned to Dr. Lynch on January 30, 2014, with continued complaints of neck and back pain. Dr. Lynch gave Goodman a note indicating he could return to work "when testing is concluded" and noted "cervical/lumbar radiculopathy." Goodman underwent an MRI on February 14, 2014. On February 18, 2014, Dr. Lynch noted that the MRI revealed that Goodman had arthritis in his neck and his back "looked ok." Dr. Lynch referred Goodman to Dr. Maccree at Oak Ridge Neurosurgery. Goodman's sick leave exhausted on February 19, 2014.

In order to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). While the employee need not actually mention the FMLA by name, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition. *Id.* Here, the City was aware that Goodman had a spinal injury that required treatment in 2007. More recently, Goodman provided the City with a note from Dr. Lynch stating Goodman could return to work "when testing is concluded" and that the nature of his illness was "cervical/lumbar radiculopathy." This notice is sufficient to put the City on notice that Goodman may have a recurrence of his spinal injury and that Goodman was unable to perform the functions of his job.

Once an employer is on notice that an employee has a qualifying medical condition, the employer must: (1) within five business days notify the employee of his eligibility to take FMLA leave (29 C.F.R. § 825.300(b)(1)); (2) notify the employee in writing whether the leave will be designated as FMLA leave (29 C.F.R. § 825.300(d)(1)); (3) provide written notice detailing the employee's obligations under the FMLA and explain any consequences for failing to meet those obligations (29 C.F.R. § 825.300(c)(1)); and (4) notify the employee of the specific amount of leave that will be counted against the employee's FMLA leave requirement (29 C.F.R. § 825.300(d)(6)). The City did not make any inquires of Goodman or his medical providers. Instead, Carolyn Brewer, the City employee charged with informing employees of their FMLA rights, testified "she does not afford an employee FMLA rights until they specifically ask for it."

9

Here, taking the facts in a light favorable to Goodman, a jury could reasonably conclude that the City failed in its obligations to inform Goodman of his right to take unpaid leave under the FMLA once he had exhausted his paid sick leave. Accordingly, the City's motion for summary judgment on Goodman's interference claim is denied.

## B.  FMLA Retaliation

Under the FMLA, an employer is prohibited from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the FMLA. *Donald v. Sybra, Inc.,* 667 F.3d 757, 761 (6th Cir. 2012). To state a *prima facie* case of retaliation under the FMLA, Goodman must show that:  (1) he was engaged in an activity protected by the FMLA, (2) the City knew that he was exercising his rights under the FMLA, (3) the City took an employment action adverse to him, and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Killian v. Yorozu Auto. Tennessee, Inc.,* 454 F.3d 549, 556 (6th Cir. 2006).

Because the court has already found that Goodman gave the City notice of a serious medical condition and the City failed in its obligations to inform Goodman of his right to take unpaid leave under the FMLA once he exhausted his paid sick leave, Goodman has established the first three elements of a *prima facie* case. Moreover, Goodman has established the fourth element because the City has offered no reason, other than his unexcused absences, for his termination. Accordingly, the City's motion for summary judgment on Goodman's retaliation claim is denied.

In conclusion, the court finds that there are disputed issues of material fact which preclude summary judgment, and the City of Kingston's motion for summary judgment [R. 22] is **DENIED in its entirety.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**

11